UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

vs.                                         Case No. 8:19-CR-149-T-33-AAS

JOSE MIGUEL ARBOLEDA-VELEZ
_____/

## SENTENCING MEMORANDUM

### I.    Legal Framework for Sentencing Analysis

It is now well established that sentencing requires a two-step process. First, the district court must correctly calculate the sentencing guideline range. Second, the district court must consider the factors outlined in 18 U.S.C. §3553(a) to determine a reasonable sentence as to each defendant in each case.

In United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005), the Eleventh Circuit enumerated the ten factors used to determine a reasonable sentence: (1) the nature and circumstances of the offense and the defendant's personal history and characteristics; (2) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law and to provide a just punishment; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with appropriate educational training, vocational training, or medical care; (6) types of sentences

1

available; (7) the correctly-calculated sentence range under the Sentencing Guidelines; (8) pertinent policy statements of the U.S. Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.

## II. Analysis of 18 U.S.C. § 3553(a) Factors

### A. History And Characteristics Of The Defendant

Jose Miguel Arboleda-Velez was born on May 27, 1989 in the city of Santiago de Cali, Department of Valle de Cauca, Republic of Colombia.[1] Mr. Arboleda-Velez's parents raised him in a loving home along with his two brothers and one sister.[2] Due to financial constraints, the family lived with Mr. Arboleda-Velez's grandmother until Mr. Arboleda-Velez was eleven years old.[3]

Mr. Arboleda-Velez's parents were able to provide him with the necessities of life.[4] According to Mr. Arboleda-Velez, he ate 3 times a day, had a pair of shoes, and had sufficient clothing to wear.[5] Also, Mr. Arboleda-Velez was able to attend school up until the ninth grade, at which time financial pressures impelled him to leave school and go to work with

---

[1] PSR, Page 3
[2] July 19, 2019 interview of Jose Miguel Arboleda-Velez.
[3] Id.
[4] Id.
[5] Id.

his father as a construction laborer.[6]

When Mr. Arboleda-Velez was around 25 years of age, he found work as an auto mechanic.[7] He did not attend any special schooling, but rather learned as he worked.[8] Before his arrest in this case, Mr. Arboleda-Velez had been working as an auto mechanic in Santiago de Cali for approximately 5 years.[9]

Mr. Arboleda-Velez has a ten-year-old daughter from a relationship with Ms. Lucero Owando.[10] Before his arrest in this case, Mr. Arboleda-Velez was in contact with his daughter and provided for her financially.[11]

For the last four years, Mr. Arboleda-Velez has been in a relationship with Ms. Michel Gutierrez-Palacios.[12] The couple has a daughter together, who is two years old.[13] Before his arrest in this case, Mr. Arboleda-Velez resided with Ms. Gutierrez-Palacios and their daughter in a home owned by Ms. Gutierrez-Palacios' mother.[14]

According to Ms. Gutierrez-Palacios, Mr. Arboleda-Velez has supported

---

[6] PSR, Page 10.
[7] PSR, Pages 9-10
[8] June 12, 2019 Presentence Investigation Interview of Jose Miguel Arboleda-Velez
[9] PSR, Pages 9-10
[10] PSR, Page 8
[11] Id.
[12] Id.
[13] Id.
[14] Id.

her both emotionally and financially as she has worked towards finishing her university degree[15] in healthcare administration.[16] Ms. Gutierrez-Palacios describes Mr. Arboleda-Velez as:

> [A] good son, friend, work colleague and [partner] in life and the best father that I could have found for my daughter.[17]

## B. The Correctly-Calculated Sentence Range Under The Sentencing Guidelines

The PSR calculates Mr. Arboleda-Velez's sentencing guideline offense level to be 33, and his criminal history category to be criminal history category I.[18] Therefore, according to the PSR, Mr. Arboleda-Velez's guideline range of imprisonment is 135 to 168 months of imprisonment.[19]

With respect to the PSR's sentencing guideline calculation, Defense Counsel respectfully makes two objections. First, Counsel objects to the PSR as it holds Mr. Arboleda-Velez responsible for the weight of the cocaine that defendants Morales-Reyes, Ruiz-Reyes, and Cortes-Salazar transported aboard the *Sixoy I*. Second, Counsel objects to the PSR, as it does not include a minor role downward adjustment pursuant to U.S.S.G.

---

[15] See Exhibit #1B – Letter from Michel Palacios Gutierrez.
[16] June 12, 2019 Presentence Investigation Interview of Jose Miguel Arboleda-Velez
[17] See Exhibit #1B – Letter from Michel Palacios Gutierrez.
[18] PSR, Page 7
[19] PSR, Page 10

3B1.2.

1. **Mr. Arboleda-Velez Is Not Responsible for the Weight of the Cocaine that Defendants Morales-Reyes, Ruiz-Reyes, and Cortes-Salazar Transported Aboard the *Sixoy I***

   **a. Relevant Conduct in Jointly Undertaken Criminal Activities**

U.S.S.G §1B1.3 (2018) provides that a defendant's "relevant conduct" for sentencing purposes includes "all acts and omissions committed, aided, abetted . . . or willfully caused by the defendant." U.S.S.G. §1B1.3(a)(1)(A). In the case of a "jointly undertaken criminal activity," relevant conduct also includes certain acts and omissions of others. U.S.S.G. §1B1.3(a)(1)(B).

U.S.S.G. §1B1.3(a)(1)(B) defines "relevant conduct" in the case of jointly undertaken criminal activity to include: all acts and omissions of others that were— (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity; that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense. U.S.S.G. § 1B1.3(a)(1)(B).

According to the § 1B1.3 commentary, only the conduct of others that meets all three criteria set forth in subdivisions (i) through (iii) (<u>i.e.</u>, "within the scope," "in furtherance," and "reasonably foreseeable") is relevant

conduct under this provision. *See* §1B1.3, comment. (n.3(A)). Further, the commentary states that "[i]n order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B), the [district] court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement). In doing so, the court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others. The accountability of the defendant for the acts of others is limited by the scope of his or her agreement to jointly undertake the particular criminal activity. **Acts of others that were not within the scope of the defendant's agreement, even if those acts were known or reasonably foreseeable to the defendant, are not relevant conduct under subsection (a)(1)(B). U.S.S.G. §1B1.3, cmt. n.3(B) [Emphasis added].**

### b. Relevant Conduct Analysis in the Case at Bar

Mr. Arboleda-Velez was a mariner aboard the vessel *Posicon*.[20] His role aboard the *Posicon* was, when directed by the captain, to carry a gasoline container from the bow of the vessel to the stern of the vessel.[21] Once he placed the gas container at the stern, another crewmember would insert a

---

[20] PSR, Page 5
[21] Id.

6

hose into the gas container, which led to one of the vessel's motors.[22]

Therefore, the scope of the criminal activity that Mr. Arboleda-Velez agreed to jointly undertake (i.e. to ensure that the *Posicon* had a steady supply of fuel so that it could transport its cargo of cocaine) was limited to the vessel *Posicon*. Mr. Arboleda-Velez's actions did not further the progress of the *Sixoy I*. To the contrary, Mr. Arboleda-Velez's actions were unrelated to the *Sixoy I* and had no affect on the *Sixoy I*. Consequently, the cocaine that the crew of the *Sixoy I* transported should not be considered when determining Mr. Arboleda-Velez's base offense level.

The PSR is silent with respect to how much cocaine was aboard the *Sixoy I* and how much cocaine was aboard the *Posicon*.[23] Rather, the PSR states that both vessels in the aggregate carried 815.1 kilograms of cocaine.[24] The Defense does not object to the accuracy of this aggregate weight. However, since it is unknown how much cocaine the *Sixoy I* and the *Posicon* carried individually, the base offense level should be determined by the minimum cocaine weight for the charges to which the Defendant has pleaded guilty, to wit, 5 kilograms of cocaine. Accordingly, the base offense level pursuant to

---

[22] Id.
[23] PSR, Page 5; *Note*: the U.S. Coast Guard reports provided by the Government to the Defense do not include a breakdown of the number of kilograms of cocaine removed from the *Sixoy I* and the number of kilograms of cocaine removed from the *Posicon*.
[24] Id.

USSG 2D1.1 is level 30.[25]

**2. <u>The Defendant Qualifies for a 2 Level Downward Adjustment for Minor Role</u>**

The Defense objects to the PSR, as it does not include a guideline reduction for minor role pursuant to U.S.S.G. § 3B1.2. The Defense argues that Mr. Arboleda-Velez qualifies for a two level reduction for minor role because he is less culpable than most of the participants in the conspiracy to which he has pleaded guilty. Specifically, with regard to the factors set out in Section 3(C) of the Commentary of U.S.S.G. 3B1.2:

    a. Mr. Arboleda-Velez had little or no degree of understanding of the scope and structure of the criminal activity; he was simply instructed to assist in the transportation of the cocaine from point A to point B.

    b. Mr. Arboleda-Velez had no role in the planning or organization of the criminal activity, including no role in the planning or organization of the transportation operation itself.

    c. Mr. Arboleda-Velez had no decision-making authority, nor did

---

[25] *Note:* The Government's sentencing memorandum filed on September 4, 2019 states that the Coast Guard removed 373 bricks from the vessel *Posicon* (*see* Doc. 125, page 3). The Coast Guard reports state that the bricks weighed approximately one kilogram each (*see* Bates Stamp pages #60, #69, #71). If the Court were to hold Mr. Arboleda-Velez responsible for 373 kilograms, his base offense level would be level 36 (before any adjustment for minor role).

he have any influence regarding the exercise of decision-making authority. He simply followed the directions of others, including direct orders from the captain of the go-fast vessel Mr. Intriago-Loor.

d. The nature and extent of Mr. Arboleda-Velez's activity and participation was limited to carrying gas containers from the bow of the vessel to the stern of the vessel *Posicon*. Mr. Arboleda-Velez had no discretion or responsibility in this matter as he moved the containers at the direction of the captain.

e. The payment that Mr. Arboleda-Velez was to receive for his participation was a small fraction of the value of the cocaine that the go-fast vessel *Posicon* transported.[26]

Importantly, Mr. Arboleda-Velez had no proprietary interest in the criminal activity as he was simply being paid to assist in the transportation of the cocaine. A defendant may receive an adjustment under U.S.S.G. §3B1.2, if he or she is substantially less culpable than the average participant

---

[26] The Government and the Defense stipulate that that the value of one kilogram of cocaine in Tampa, Florida is worth between $32,000 and $36,000 in United States Dollars. Further, the Government and the Defense stipulate that historically, cocaine trafficking organizations pay mariners anywhere from $3,000 to $15,000 depending on the organization and the quantity of cocaine.

in the criminal activity. Here, Mr. Arboleda-Velez is less culpable than the captain of the go-fast, Mr. Intriago-Loor. Mr. Arboleda-Velez is less culpable than the individual that recruited him.[27] Mr. Arboleda-Velez is less culpable than the organizer of the venture.[28]

### C. The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct

Mr. Mr. Arboleda-Velez is not a danger to reoffend.

First, Mr. Mr. Arboleda-Velez has no prior criminal history.[29] The United States Sentencing Commission has noted that first time offenders such as Mr. Arboleda-Velez are easily the most empirically identifiable group of guideline federal offenders who are the least likely to re-offend.[30]

Second, Mr. Arboleda-Velez is well aware that when he agreed participate in this smuggling venture that he made the biggest mistake in his life. The results of that decision have been disastrous for him; he has been incarcerated, stripped of all that is familiar to him, and separated indefinitely from his wife and children.

When the Bureau of Prisons does eventually release Mr. Arboleda-Velez, he will undoubtedly steer clear of any contact with drug shipments for the

---

[27] *See* PSR, Page 5, Paragraph 12.
[28] *See* Defendant's Response to PSR, Document #122, page 19 of 26, § 4(c)
[29] PSR, Page 7
[30] *Recidivism and the First Offender*, United States Sentencing Commission, May 2004

remainder of his life.

**IV. Conclusion**

The Defense respectfully requests this Court take all the forgoing factors into consideration when it imposes a sentence that is "sufficient but not greater than necessary to comply with" the goals of sentencing set forth in 18 U.S.C. § 3553(a).

Respectfully submitted this 4th day of September 2019.

/s/ *David C. Hardy*
David C. Hardy, Attorney at Law
Board Certified Specialist in Criminal Trial Law
Florida Bar #689661
The Hardy Law Firm, P.A.
1710 N. 19TH Street, Suite 215
Tampa, FL 33605
Telephone: (813) 990-9547
Facsimile: (813) 354-4617
Email:dch@thehardylawfirm.com

# EXHIBITS

Exhibit #1A    Page 1 - Letter in Spanish from Michel Palacios Gutierrez

Exhibit #1B    Page 2 - Letter in Spanish from Michel Palacios Gutierrez

Exhibit #2     Translated Letter from Michel Palacios Gutierrez

## Certificate of Service

I HEREBY CERTIFY that on September 4, 2019 I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Mr. Diego Novaes, AUSA
Office of the United States Attorney
400 North Tampa Street, Suite 3200
Tampa. FL 33602

/s/ *David C. Hardy*
David C. Hardy, Attorney at Law
The Hardy Law Firm, P.A.
Florida Bar #689661
1710 N. 19th Street, Suite 215
Tampa, Florida 33605
Tel: (813) 990-9547
dch@thehardylawfirm.com